**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
- - - - - - - - - - - - - - - X
Hector Reyes,                  :
                               :
     Petitioner,               :
                               :          04 Civ. 5005 (JFK)
          -against-            :          01 Cr. 257 (JFK)
                               :          OPINION and ORDER
UNITED STATES OF AMERICA,      :
                               :
     Respondent.               :
- - - - - - - - - - - - - - - X
```

APPEARANCES:

    For Petitioner,

        HECTOR REYES, pro se
        45152-054
        FCI Elkton
        P.O. Box 10
        Lisbon, OH 44432

    For Respondent,

        DAVID N. KELLEY,
        United States Attorney
        Southern District of New York
        One Saint Andrew's Plaza
        New York, New York 10007
        Of Counsel:   AUSA Joshua A. Levine

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

**PRELIMINARY STATEMENT**

Before the Court is Hector Reyes' pro se motion to correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion is denied.

**THE INDICTMENT AND PLEA AGREEMENT**

On December 4, 2001, Reyes and seventeen other defendants were indicted on two counts. Count One, the only count naming Reyes, charged him and twelve other individuals with conspiracy to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 846.

Represented by his privately-retained attorney, Reyes entered into a Plea Agreement with the Government dated March 25, 2002. The agreement stipulated that (i) Reyes' base offense level would be 36 pursuant to United States Sentencing Guidelines ("Guidelines" or "USSG") § 2D1.1(c)(2) because his conduct involved at least 50 kilograms but less than 150 kilograms of cocaine; (ii) Reyes' plea of guilty would merit a two-level decrease in offense level for acceptance of responsibility pursuant to USSG § 3E1.1(a); (iii) Reyes would receive a one-level reduction pursuant to USSG § 3E1.1(b)2 for his timely

acceptance of the plea agreement; and (iv) the resulting offense level would be 33.  The parties further stipulated that Reyes' Criminal History Category was I, and that the total Guidelines range was 135 to 168 months.  The agreement also provided:

> The parties agree that the defendant does not intend to seek relief from the statutory minimum sentence provision pursuant to Title 18, United States Code, Section 3553(f), nor does he seek a reduction in sentence puruant to U.S.S.G §§ 2D1.1(b)6 and 5C1.2.
> . . . .
> The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range of 135 to 168 months is warranted.
> . . . .
> It is further agreed . . . that the defendant will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the Stipulated Guidelines Range of 135 to 168 months . . . .

Plea Agreement at 2-4[1].

## THE PLEA PROCEEDING

On March 25, 2002, Reyes pleaded guilty before Magistrate Judge Douglas F. Eaton.  Magistrate Judge Eaton noted that Reyes was receiving simultaneous translation of the proceeding from a Spanish interpreter. Plea Transcript at 2.  Reyes confirmed that he had never been treated for mental illness and that, while he had at one time been a drug addict, he was not then under the influence of any drug. Id. at 4-5.  Reyes also

---

[1] The agreement refers to the pre-2004 version of 2D1.1(b)6, which has been amended and moved to 2D1.1(b)7.

confirmed that he had reviewed the charge against him with his attorney, and that he was satisfied with his attorney's representation of him. Id. at 5.

Magistrate Judge Eaton then addressed the Plea Agreement, which Reyes stated he had reviewed with the assistance of his attorney and an interpreter. Id. at 6. Reyes confirmed that no promises other than those contained in the Plea Agreement were made to him to induce his guilty plea. Id. Reyes also expressed his understanding that the sentencing judge might impose a sentence deviating from the range stipulated in the Plea Agreement and that, nevertheless, Reyes would be bound by his guilty plea. Id. at 6-7.

Magistrate Judge Eaton then explained the possible sentence faced by Reyes, noting that Congress has imposed a maximum sentence of life for the charged offense. Id. at 7-8. He further explained that the sentencing judge would consider the Guidelines to determine Reyes' sentencing range, and would then decide whether any departure from that range is appropriate. Id. at 8-9. Reyes confirmed that he was pleading guilty of his own free will and because he was guilty of the charged conduct. Id. at 10. After explaining at length the potential consequences of Reyes' guilty plea, including a statutory minimum of 10 years' incarceration and mandatory supervised release, Magistrate Judge Eaton turned to the specific terms of the Plea Agreement. Id. at

10-13.

        Magistrate Judge Eaton noted that, under the terms of the Plea Agreement, Reyes agreed to seek no departure from the stipulated range of 135 to 168 months nor from the statutory 10 year minimum. Id. at 14. Magistrate Judge Eaton also apprised Reyes that his rights of appeal were limited by the Plea Agreement. Specifically, he explained that "[i]f [the sentencing judge] imposes a sentence of no more than 168 months, you have agreed in advance that you will not take an appeal." Id. at 15.

        Magistrate Judge Eaton then explained all of the rights that Reyes would have had at trial if he entered a plea of not guilty. Id. at 16-19. Reyes confirmed his understanding that, by pleading guilty, he was relinquishing those rights and that the sentencing judge may impose a sentence as though he had been found guilty. Id. at 19. The Government then stated the elements it would have had to prove at trial and summarized the evidence supporting the charge. Id. at 20-21. Reyes then admitted the charged conduct, his participation in a conspiracy to distribute approximately 65 kilograms of cocaine. Id. at 21.

        Magistrate Judge Eaton then read Count One of the indictment, to which Reyes pleaded guilty. Id. at 23-24. Magistrate Judge Eaton determined that Reyes was competent to enter a plea. He also found that the plea was voluntary and supported by a factual basis. Id. at 24. Magistrate Judge Eaton

recommended that the Court accept Reyes' plea. Id. at 25. On May 2, 2002, the late Judge Allen G. Schwartz accepted the plea[2].

## SENTENCING

Reyes appeared before the Court on June 18, 2003 for sentencing. Although counsel continued at all times to represent Reyes, Reyes submitted to the Court two pro se letters which counsel had neither received nor read. Sentencing Transcript at 2-3. The letters requested a downward departure for extraordinary rehabilitation, extraordinary family circumstances and minimum participation, and for relief under the "safety valve" clause, 18 U.S.C. § 3553(f). Id. Counsel stated that "we withdrew any motions for the safety valve and/or for the minimal participation" as part of the plea negotiations. Id. at 3. Counsel explained that the Government's possession of evidence relating to Reyes' role in a narcotics-related kidnapping scheme inspired his decision not to move for the departures. Id.

Counsel confirmed that he had discussed the probation department's pre-sentence report ("PSR") with Reyes. Id. at 4. When the Court asked Reyes if he was ready for sentencing, Reyes replied that he was not. Id. The Court informed Reyes that it would hear his reasons for not being ready. The Court continued:

---

[2]Judge Schwartz passed away in 2003 and his criminal docket was reassigned to the undersigned.

> But so far as these applications for downward
> departures on the grounds of extraordinary
> rehabilitation, unusual or extraordinary family
> circumstances and minimum participation, I find nothing
> in the probation report or anything in Judge Schwartz's
> file that in any manner, shape or form would entitle
> you to a downward departure. I'm well aware of my
> right to depart if the case is out of the heartland. I
> don't believe in [sic] that this case in any manner,
> shape or form is out of the heartland. Also, I do not
> believe that the defendant is entitled to safety valve
> treatment.

Id. at 4-5.

Reyes then began to explain his family circumstances. The Court interjected, explaining that Reyes would have an opportunity to speak on this immediately before sentencing and that he should now only address the narrow question of whether there existed any reason for adjournment. Id. at 5-6. Reyes responded: "There is a reason. I haven't been able to be in touch with my lawyer for all of this time. Ever since I signed up for that plea agreement, my lawyer hasn't come back to visit me." Id. at 6. Reyes also stated that he would like to change his counsel or represent himself pro se. Id. Counsel responded that he had continued communication with Reyes and his family even after the Plea Agreement. Id. He also described his attempts to bargain with the Government to negotiate favorable changes to the Plea Agreement by offering Reyes' cooperation. Id. at 6-7. Counsel maintained that the Government would not offer either a safety valve or minimum participation reduction because

7

Reyes failed to cooperate before entering the plea. Id. at 7.

Reyes then reiterated that Counsel represented him until he signed the Plea Agreement but was out of touch thereafter. Id.  The Court informed Reyes of his right to replace his attorney and that the Court would adjourn the sentencing if Reyes so desired. Id. at 7-8.  Reyes responded that he was ready for sentencing and desired for his attorney to continue representing him. Id. at 8.

The attorney made a statement on behalf of Reyes and requested that the Court impose a sentence at the bottom of the stipulated sentence range. Id. at 8-10.  The Court sentenced Reyes to 135 months' incarceration, followed by five years of supervised release, and a $100 special assessment. Id. at 11-12.  The Court then advised Reyes of his right to appeal except to the extent he had given up that right in the plea agreement. Id. at 13.

## THE § 2255 MOTION

Reyes filed his Section 2255 motion pro se on June 25, 2004.  He claims that his defense counsel failed to move for a downward departure pursuant to USSG § 5C1.2.  He has also attached a letter requesting a downward departure on grounds of extraordinary family circumstances and minimum participation.

## DISCUSSION

Relief from a final judgment under Section 2255 is generally available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995). A Section 2255 motion may not serve as a substitute for an appeal. United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998). Furthermore, a defendant's failure to raise a claim on direct appeal – also known as procedural default – generally bars review of the claim under Section 2255 unless he can show cause for the default and actual prejudice resulting therefrom. See Bousley v. United States, 523 U.S. 614, 622-23 (1998). However, this procedural default rule does not apply to ineffective assistance of counsel claims, which may be considered in a Section 2255 motion even if not raised on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003).

Reyes claims that he was deprived of effective assistance by his counsel's failure to move the Court for a downward departure pursuant to USSG § 5C1.2, the "safety valve" provision. He also submits a letter seeking a departure for extraordinary family circumstances and minimum participation. Reyes did not raise the two latter issues on direct appeal. Therefore, application of the procedural default rule normally would bar these claims because Reyes has not alleged that his

attorney's failure to move the Court for the requested relief deprived him of effective assistance of counsel. However, we hold pro se submissions to a "less stringent standard[] than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 521(1972). It is obvious from the sentencing transcript and from Reyes' Section 2255 petition that he desired to move for departures on these grounds as well as for safety valve treatment. Thus, the Court will consider these claims as part of his ineffective assistance claim.

It is well-settled that "[t]here is no general bar to a waiver of collateral attack rights in a plea agreement." Frederick v. Warden, Lewisburg Correctional Facility, 308 F.3d 192, 195 (2d Cir. 2002) (citation omitted). While such waivers do not "foreclose an attack on the validity of the process by which the waiver has been procured," i.e., the plea agreement, id. (citation omitted), Reyes does not claim that ineffective assistance tainted the plea bargaining or agreement process. Although the Second Circuit has suggested that ineffective assistance of counsel in entering a plea agreement "might cast doubt on the validity of [a defendant's] waiver," United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998), this is not such a case.

Instead, Reyes asserts that his counsel was ineffective at sentencing for failing to move the Court for the downward

10

departures.  The Court of Appeals for the Second Circuit, however, has rejected an analogous attempt to circumvent a waiver of appellate rights with a claim of counsel's deficiency at sentencing.  In United States. v. Djelevic, the defendant attempted "to dress up his claim as a violation of the Sixth Amendment, [but] in reality [was] challenging the correctness of his sentence under the Sentencing Guidelines, and [was] therefore barred by the plain language of the waiver contained in his plea agreement with the government." Id.  The court observed, "If we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless." Id.  Thus, the court "emphatically reject[ed]" the defendant's claim. Id.

The Djelevic decision compels similar disposition of Reyes' claim.  The Plea Agreement between Reyes and the Government expressly waives Reyes' right to challenge through a Section 2255 motion any sentence within the stipulated range of 135 to 168 months.  The Court sentenced Reyes to 135 months' imprisonment, the bottom of the agreed-upon range.  Thus, the Court does not reach the merits of Reyes' ineffective assistance claim and the motion is dismissed.

**CONCLUSION**

For the foregoing reasons, Hector Reyes's motion to

correct his sentence pursuant to 28 U.S.C. § 2255 is dismissed. This case is closed, and the Court directs its removal from the docket.

**SO ORDERED.**

Dated:   New York, New York
         September 16, 2005

                                    JOHN F. KEENAN
                                    United States District Judge